# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TAMMY ELIZABETH WAUPOOSE**
        **Plaintiff,**

    v.                                                                 **Case No. 21-C-850**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

    Plaintiff Tammy Waupoose applied for social security disability benefits, alleging that she suffered from lymphoma, cancer, anxiety, and depression. The Administrative Law Judge ("ALJ") assigned to the case concluded that plaintiff's mental impairments were severe, limiting her to simple, routine work involving limited interaction with coworkers and the public. However, the medical records contained no evidence of cancer, and the ALJ found no physical limitation on plaintiff's ability to work. Relying on the testimony of a vocational expert ("VE"), the ALJ found that there were jobs existing in significant numbers in the national economy that plaintiff could perform within these restrictions. He accordingly denied her application.

    Proceeding pro se, plaintiff brought this action for judicial review, but she alleges no error in ALJ's decision. Rather, she contends that her medical records have been erased or altered to hide the references to cancer and potential aneurysm. Plaintiff does not present, nor does the record contain, any evidence supporting her claim that multiple medical providers engaged in fraud to conceal her conditions. I therefore affirm the ALJ's decision and dismiss this action.

# I. STANDARDS OF REVIEW

The agency has adopted a five-step test for determining disability, under which the ALJ asks whether: (1) the claimant is presently employed; (2) the claimant has a severe, medically determinable impairment or impairments; (3) the claimant's impairment meets or equals an impairment listed in the regulations ("the Listings") as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity ("RFC") leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other jobs existing in significant numbers in the national economy. Butler v. Kijakazi, 4 F.4th 498, 501 (7th Cir. 2021).

A reviewing court does not redetermine disability but rather ensures that the ALJ's decision is supported by "substantial evidence" and free of harmful legal error. Gedatus v. Saul, 994 F.3d 893, 900 (7th Cir. 2021). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The court may not, under this deferential standard, re-weigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for that of the ALJ. Id.

# II. FACTS AND BACKGROUND

Plaintiff applied for benefits in November 2019, alleging a disability onset date of December 28, 2017. (Tr. at 132.) In a disability report, plaintiff listed impairments of small cell lymphoma, thyroid cancer, two aneurysms in her neck, panic attacks, depression, and anxiety. (Tr. at 148.)

The agency collected plaintiff's medical records, which showed that she was seen for a tonsillar mass in January 2017. (Tr. at 211-13.) She subsequently saw a series of doctors

2

for testing, which revealed enlarged lymph nodes and thyroid nodules, which appeared benign. (Tr. at 230, 294, 505-09, 532-35.)

On December 8, 2017, plaintiff saw Dr. Cristina Blot, an endocrinologist, in consultation. Dr. Blot noted: "She has multiple complaints, she is tangential, her discourse is precipitated, nonsensical at times." (Tr. at 294.) Dr. Blot reviewed plaintiff's history, noting that a January 23, 2017, neck CT revealed a tonsillar mass, abnormality in the right neck, and multiple indeterminate bilateral thyroid nodules. (Tr. at 294.) She then underwent resection of the right tonsillar mass, which turned out to be squamous papilloma. (Tr. at 294.) On March 8, 2017, plaintiff had a thyroid ultrasound, which revealed multiple small bilateral colloid nodules with benign imaging characteristics, and no cervical lymphadenopathy. She then had a soft tissue ultrasound of the neck in May, which showed multiple normal-sized cervical lymph nodes with a benign appearance, and two to three nodes that had decreased in size since the prior CT. (Tr. at 295.) Plaintiff was very upset that no physician had done anything about the lymph nodes, and she thought she might have lymphoma. (Tr. at 295.) On exam, she was tearful and anxious, with mild thyromegaly with no obvious nodules. (Tr. at 297.) Dr. Blot assessed multiple thyroid nodules, which are common in women as they age.

> The patient was reassured multiple times that the FNA was not suggestive of cancer; that the enlarged submandibular cervical nodes are not caused by thyroid disease. I reviewed with the patient the CT scan, the thyroid ultrasound and the soft tissue neck ultrasound which did not show enlarged or concerning lymphadenopathy. The patient seems convinced that the cervical lymph nodes are enlarged due to cancer; she would like to have a biopsy of the lymph nodes done.

(Tr. at 299-300.) Dr. Blot also assessed plaintiff with an anxiety disorder. "At times the patient seems to understand that her anxiety disorder is not appropriately treated and it is definitely

3

contributing to her poor quality of life."[1] (Tr. at 300.) Dr. Blot ordered a biopsy of the right cervical lymph node. (Tr. at 300.)

On January 12, 2018, plaintiff followed up with Dr. Blot. She had the biopsy on December 28, 2017, and the pathology came back benign. (Tr. at 313, 330.) Dr. Blot reassured plaintiff that the pathology was benign and scheduled a repeat ultrasound in August 2018. She also advised plaintiff to keep a psychiatry appointment in February. (Tr. at 315.)

The record shows that plaintiff was subsequently seen by a variety of providers, usually for dental pain, often reporting a history of lymphoma or cancer (Tr. at 335, 339, 344-45, 366-67, 379-80, 383-84, 395, 403, 413, 416, 423, 432, 548), but providers saw no evidence of this in her records (Tr. at 345, 367, 413, 416, 423, 435, 548), and she was not diagnosed with any form of cancer (Tr. at 337, 341-42, 346, 369-70, 416, 551). Plaintiff alleged that reports were altered and someone tampered with the specimen collected during her biopsy. (Tr. at 346.) She reported to one provider that Dr. Blot told her she likely had lymphoma, but that Dr. Blot said she was unable to do anything to treat it (Tr. at 348-49); the provider reviewed Dr. Blot's note, diagnostic testing, and pathology reports, which confirmed that plaintiff had no cancerous process (Tr. at 349). Plaintiff told another provider that her doctors told her to "go home and die" because there is nothing to be done. (Tr. at 432.)

The agency denied plaintiff's application on April 16, 2020 (Tr. at 59, 84), with the agency reviewer noting that the medical evidence showed a history of multiple benign thyroid nodules, cervical lymphadenopathy, recurrent dental abscesses, depression, and anxiety (Tr. at 63). William Fowler, M.D., a medical consultant, limited plaintiff to medium level work due

---

[1] The record shows that plaintiff's primary physician prescribed medication for depression and anxiety. (Tr. at 231-32, 243-45.)

4

to recurrent dental pain related to abscess and TMJ of the left side (Tr. at 66), and Robert Barthell, Psy.D., a psychological consultant, found moderate impairment in social interaction but no significant limitation in understanding/memory and sustained concentration/persistence, explaining that plaintiff would do best in an environment with no more than occasional interaction with others (Tr. at 64-65, 67-68).

Plaintiff requested reconsideration (Tr. at 88), but on June 9, 2020, the agency maintained the denial (Tr. at 71, 89), based on the reviews of Mina Khorshidi, M.D. (Tr. at 79) and Susan Donahoo, Psy.D. (Tr. at 77, 80-81), who agreed with the previous assessments. Dr. Khorshidi noted that plaintiff had multiple thyroid nodules, but work-up came back benign. (Tr. at 79.)

Plaintiff then requested a hearing before an ALJ. (Tr. at 94.) On February 26, 2021, she appeared for a telephonic hearing. The ALJ also called on a VE to offer testimony on jobs plaintiff might be able to do. (Tr. at 25-26.)

Plaintiff testified that she was a high school graduate (Tr. at 34) and previously worked as a machine operator, corrections officer, and medical coder (Tr. at 35-39). Asked why she could no longer work, plaintiff testified that following a December 2017 biopsy she was diagnosed with small T-cell lymphoma (Tr. at 39), although she was later told the biopsy was benign (Tr. at 40.) "The thing is, I was never benign." (Tr. at 40.) She testified that "Dr. Blot showed me my thyroid cancer sitting in her office. She showed me the mass sitting on my common artery." (Tr. at 40.) But Dr. Blot also told her she did not have lymphoma. "This is how it went. Ascension hid the fact that I had cancer." She testified that she saw a nurse practitioner at Aurora, who went through the computer and told her what kind of cancer she had. "And then, came around and put in the records that she didn't tell me anything." (Tr. at

5

41.)

Asked again why she could not work during the period at issue, plaintiff testified:

> I was constantly sick on my stomach. . . . I was shaking. I, my nerves were shot. I couldn't – all I did was cry. All I did was go to doctors and beg them. I was, I, mentally, I was all messed up. To be honest with you, I didn't want to move out of my bed. I was told by doctors that I should be under no stress. That's why I cannot work because I cannot be under any stress because I have two potential aneurysms.

(Tr. at 42.) She indicated that during the period at issue she received medications for her mental health, including Trazodone and Remeron. (Tr. at 43.)

Plaintiff further testified that she had been told by another provider that she had two to six months to live because she had lung cancer after immunotherapy. (Tr. at 45.) "The reason you're not going to find anything in his records is because . . . he erased my records." (Tr. at 46.)

The VE testified that plaintiff's past jobs as a machine operator, corrections officer, and medical coder were semi-skilled to skilled. (Tr. at 50-52.) The ALJ then asked a hypothetical question, assuming a person of plaintiff's age, education, and experience, limited to light work, simple and routine tasks, maintaining attention and concentration for two-hour segments, simple work-related decisions, occasional changes in the work setting, and occasional interaction with supervisors, coworkers and the public. (Tr. at 52.) The VE testified that such a person could not perform plaintiff's past work but could do other jobs, such as inspector and hand packager, routing clerk, and merchandise marker. (Tr. at 52-53.)

On March 23, 2021, the ALJ issued an unfavorable decision. (Tr. at 8.) The ALJ determined that plaintiff last met the insured status requirements on March 31, 2019. (Tr. at 13.) Then, following the five-step process, he determined: (1) that plaintiff did not engage in

6

substantial gainful activity from December 28, 2017, the alleged onset date, through March 31, 2029 (Tr. at 13); (2) that through the date last insured she had the severe impairments of anxiety and depression (Tr. at 13-14); (3) that her mental impairments caused no more than mild to moderate limitations and thus did not meet or equal a Listing (Tr. at 15-16); (4) that she retained the RFC to perform a full range of work at all exertional levels but was mentally limited to simple and routine tasks, maintaining attention and concentration for two-hour segments, and occasionally interacting with supervisors, coworkers and the public (Tr. at 16), which precluded performance of her past semi-skilled and skilled jobs (Tr. at 19-20); but (5) that she could perform other jobs, as identified by the VE, including inspector and hand packager, routing clerk, and merchandise marker (Tr. at 20). The ALJ accordingly found plaintiff not disabled. (Tr. at 21.)

On June 4, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 1.) The ALJ's decision is accordingly the final word from the Commissioner for purposes of judicial review. See Wilder v. Kijakazi, 22 F.4th 644, 650 (7th Cir. 2022).

### III. DISCUSSION

Plaintiff proceeds pro se in this action, but even unrepresented litigants "must present arguments supported by legal authority and citations to the record." Cadenhead v. Astrue, 410 Fed. Appx. 982, 984 (7th Cir. 2011). Plaintiff identifies no legal or factual error in the ALJ's decision here.

As indicated above, the ALJ followed the required five-step process, and he supported his findings with substantial evidence. The ALJ acknowledged that plaintiff's mental impairments were severe (Tr. at 13), though not of Listing level severity (Tr. at 15-16). In determining RFC, he discussed the references to anxiety and depression in the medical

7

records (Tr. at 17, citing Tr. at 456), with plaintiff at times presenting as anxious and tearful (Tr. at 17, citing Tr. at 294-95). However, the record also contained a number of normal mental examinations. (Tr. at 17-18, citing Tr. at 341, 337, 376, 386, 392, 406.) Plaintiff took medication for anxiety, depression, and/or insomnia at times, which appeared to help. (Tr. at 18, citing Tr. at 442, 456.) She received no ongoing behavioral health treatment from a specialist during the relevant period. (Tr. at 18, citing Tr. at 456.) The ALJ credited the reports of the agency psychological consultants, who found that plaintiff had moderate difficulty interacting with others but retained the capacity to perform simple, routine tasks and have occasional interaction with supervisors, coworkers, and the public. (Tr. at 18, citing Tr. at 60-70, 72-83.) No medical opinion in the record suggests greater mental limitations. See Best v. Berryhill, 730 Fed. Appx. 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (quoting Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)).

The ALJ considered the various physical ailments referenced in the record, including dental issues, a tender left TMJ, and lymphadenopathy, but he noted that these conditions were treated with antibiotics, with plaintiff declining referrals to a dentist because she believed she had cancer. (Tr. at 14, citing Tr. at 251, 404, 435, 436, 442.) Because plaintiff's physical impairments caused no more than minimal limitation on her ability to work, the ALJ found them non-severe. (Tr. at 14.)

The ALJ also considered plaintiff's assertion that she has cancer. In determining her severe, medically determinable impairments at step two, the ALJ noted that plaintiff was seen for a tonsillar mass, throat pain, and tonsillar hypertrophy, with providers ordering a work-up including a neck CT scan and biopsy. (Tr. at 14, citing Tr. at 821.) The work-up revealed

8

multiple thyroid nodules, which were not malignant; plaintiff did not require ongoing treatment for these issues and was reassured they were not cancerous. (Tr. at 14, citing Tr. at 299-300.) Later, in determining RFC, the ALJ noted plaintiff's testimony that a medical provider told her that she had cancer, and that she overheard a conversation about her abnormal cells. She reported that medical facilities hid the fact that she had cancer. She testified that she was constantly sick to her stomach and her nerves were shot due to her concerns about cancer. (Tr. at 17.) The medical records also documented plaintiff's anxiety about cancer and distrust of healthcare providers. (Tr. at 17, citing Tr. at 442.) She was informed that medical work-ups did not show evidence of cancer (Tr. at 17, citing Tr. at 344-49), but she alleged, among other things, that the medical reports had been altered and someone tampered with the test results (Tr. at 17, citing Tr. at 346); she remained concerned about cancer throughout the relevant period (Tr. at 17, citing Tr. at 344-49).

A claimant cannot establish the existence of a medically determinable impairment based on her statements alone; rather, the impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. The ALJ correctly found that the evidence failed to establish the existence of cancer or lymphoma here.[2]

In her brief, plaintiff alleges that diagnoses of lymphoma, thyroid cancer, and two potential aneurysms have been hidden or erased from the medical record. (R. 12 at 1.) She

---

[2]The ALJ acknowledged plaintiff's claim of two aneurysms. (Tr. at 17.) On several occasions, plaintiff told providers that she had aneurysms, but the medical evidence does not demonstrate the existence of that condition either. (See Tr. at 339, 418, 548.)

9

presents no evidence that the various providers in this case engaged in such misconduct. See Peters v. Berryhill, No. 16-cv-1271-JPG-CJP, 2017 U.S. Dist. LEXIS 127148, at *13 (S.D. Ill. Aug. 10, 2017) (affirming where no evidence was presented suggesting the medical records were inaccurate, and the ALJ could not be faulted for taking the records at face value).

Plaintiff points to a chest x-ray ordered by Dr. Sean Nolan at West Allis Memorial Hospital in June 2017 as evidence that he believed her because of what he read in the medical records regarding the neck cancer. (R. 12 at 1.) While plaintiff told Dr. Nolan she had a history of small cell lymphoma and multiple aneurysms, he ordered a chest x-ray based on her complaints of cough and chest tightness. (Tr. at 339.) The x-ray was unremarkable, and Dr. Nolan diagnosed bronchitis. (Tr. at 342.)

Plaintiff further contends that Dr. Blot showed her the CT scan reflecting thyroid cancer. (R. 12 at 1-2.) She also contends that while the doctors ruled her biopsy benign, it was not benign, and the personnel who performed the biopsy engaged in misconduct. (R. 12 at 2-3.) As indicated above, the record shows that Dr. Blot reassured plaintiff that the CT scan did not show cancer and that the biopsy was benign. (Tr. at 299-300, 313-15.) The record contains no evidence supporting plaintiff's report of misbehavior related to the biopsy, including that someone separated out the cancer cells before sending in the sample.

Plaintiff next states that in September and October 2018 she was seen at Waukesha Memorial Hospital, where Dr. Andrew Cardoni advised her she had two to six months to live. (R. 12 at 4.) The records do not support this assertion. (Tr. at 383-86, 390-93.) She contends that in February 2019, a Dr. Dahlery [sic] refused to treat her and told her to go home and die of lung cancer. (R. 12 at 4-5.) The record shows that on February 22, 2019, her third visit to the ER for dental pain that month, Dr. Matthew Deluhery urged her to follow up with a dental

10

Case 2:21-cv-00850-LA   Filed 03/28/22   Page 10 of 11   Document 15

specialist, at which time plaintiff became verbally abusive. (Tr. at 403-04.) There is no evidence that the doctor erased any of her medical records at that time. Records from St. Luke's Hospital in February 2020 include plaintiff's self-reported history of lymphoma and cancer, but she was seen at that time for dental problems (Tr. at 548) and diagnosed with a dental infection (Tr. at 551). These records also do not support plaintiff's assertions. (See R. 12 at 5.)

In sum, the record contains no support for plaintiff's claim that she should have been found disabled based on cancer or aneurysm. Plaintiff presents no new evidence that could support a different conclusion. See Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997) (discussing criteria for sentence-six remand to consider new and material evidence). And she develops no argument that the ALJ erred in evaluating the mental impairments that were established by the evidence of record. The decision must be affirmed.

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2022.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge